**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUKAS MARKETING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-04062 |
| | ) | |
| PRINCE GEORGE'S COMMUNITY | ) | Judge Robert M. Dow, Jr. |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lukas Marketing ("Lukas") has sued Prince George's Community College ("PGCC") for breach of contract. Defendant has moved to dismiss for lack of personal jurisdiction [5]. For the reasons stated below, Defendant's Rule 12(b)(2) motion to dismiss is denied.

**I.      Background**

Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When determining whether Plaintiff has met its burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by Defendant's affidavits or exhibits. See *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). In addition, any conflicts in the affidavits regarding relevant facts must be resolved in Plaintiff's favor. See *Purdue*, 338 F.3d at 782 (citations omitted). But "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the

pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 783. The following facts are drawn from Plaintiff's complaint, [3-2], Defendant's affidavit, [6-1], and Plaintiff's affidavit, [10] Ex. A.

Defendant PGCC is a Maryland community college, created under Maryland law, and has no "employees, offices, bank accounts or property in Illinois." [6-1] ¶ 4. "PGCC is not registered to do business in Illinois and does not maintain a registered agent in Illinois." *Id.* Plaintiff Lukas is an Illinois travel and incentive marketing business. [3-2] Ex. A, ¶ 4.

In March, 2012, PGCC published on its website a request for proposal ("RFP") seeking assistance in planning and executing its "'Senior Citizen Travel Program – 7 Night Southbound Alaska Cruise,' to be held August 3, 2012 through August 12, 2012."[1] [3-2] ¶ 3. Although the specific services that PGCC sought are not explicitly stated anywhere in the record, Lukas proposed to perform all of the administrative functions necessary to execute a large group trip. See generally [3-2] Ex. A. This included booking the service providers, planning and organizing the trip to and from Maryland, and performing incidental convenience services during the trip. See *id.*

Lukas's proposal contemplated a long-term relationship spanning the finalization of the proposal with PGCC to, at least, the culmination of the trip. Illustrative of that partnership, the proposal included a Travel Escort "involved in this project from day one," who would make bookings and handle any special requests. [3-2] Ex. A, ¶ 12. In addition, the escort would travel with the group to and from Baltimore and provide assistance, such as operating a hospitality desk

---

[1] Lukas's proposal, [3-2] Ex. A, shows that the RFP was for an "11 night Ultimate Caribbean Cruise," but this seems to be a clerical error as the itinerary in that proposal lists Alaskan rather than Caribbean destinations. See *id.* ¶ 16. Additionally, the proposal, as opposed to the complaint, dates the trip from August 3-10, 2012. See *id.* ¶ 1. However, the transportation is listed as departing on August 2 and returning on August 13. See *id.* ¶ 7. Clarification of the dates and duration of the trip is unnecessary for purposes of determining whether personal jurisdiction exists.

on board the cruise ship, locating a return bus, and securing porterage. *Id.* Lukas also proposed to provide a representative on campus at PGCC twice per month for meetings and to staff a desk at PGCC, if given a table and chair, to answer questions and book passage. *Id.* ¶¶ 27, 33. Neither Plaintiff nor Defendant has taken the opportunity to clarify for the Court the purpose of the twice-monthly meetings or confirm whether they in fact occurred.

After receiving Lukas's initial proposal, PGCC directed questions to Lukas and the parties conducted negotiations via "numerous phone calls, e-mails, and other correspondence." [10] Ex. A, ¶ 5. PGCC characterizes the phone and e-mail negotiations as "limited" but does not explain in what way they were limited or provide evidence of more complete negotiations elsewhere. [11] at 3. Therefore, although "other correspondence" is ambiguous, the Court has no reason to conclude that the phrase indicates the occurrence of substantial negotiations with no connection to Illinois. Defendant's intention may be to argue that what negotiations took place were of no consequence (not "intensive," [11] at 7), but the allegations and the available evidence suggests that negotiations were not merely perfunctory. For instance, PGCC helped shape the final proposal by requesting changes to the travel itinerary. [10] Ex. A, ¶ 6.

Upon successful negotiations, PGCC called Lukas to award it the project. *Id.* ¶ 7. Around April 24, 2012, Plaintiff's principal traveled to Maryland to speak at PGCC's public announcement of Lukas as the winning bidder. [3-2] ¶ 6. Shortly thereafter, PGCC sent a down payment of $21,600 to Lukas in Illinois, in lieu of signing the bid, as required by the agreement. [10] Ex. A, ¶8.

Sometime after Plaintiff performed all of its obligations under the proposal, Defendant cancelled the award. [3-2] ¶¶ 7, 8. Lukas then filed this action in the Circuit Court of the

Eighteenth Judicial Circuit, DuPage County, Illinois, on March 22, 2013, alleging breach of contract and damages of $107,570.14 for cancellation costs and loss of commission. [3-2] ¶ 9.

On May 31, 2013, PGCC removed this action to this Court and on June 6, 2013 filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [3]; [5].

## II.    Legal Standard

A federal court sitting in diversity in Illinois will have personal jurisdiction over a defendant only if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Thus, courts examine three "distinct obstacles to personal jurisdiction:" (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law. See *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). But because the Illinois long-arm statute authorizes personal jurisdiction to the constitutional limit, the analysis "collapse[s] into two constitutional inquiries — one state and one federal." *RAR*, 107 F.3d at 1276.

The Seventh Circuit has noted that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003), despite a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *Rollins v. Elwood*, 565 N.E.2d 1302, 1316 (Ill. 1990); see also *Hyatt Int'l*, 302 F.3d at 715 (acknowledging *Rollins*, but noting that even if the Illinois state and federal due process standards hypothetically might diverge, no basis for such a divergence existed in the case before it). In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical

4

matter in regard to personal jurisdiction, a single due process inquiry will suffice.  See *Hyatt*, 302 F.3d at 715; *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 827 N.E.2d 1031, 1037 (Ill. App. Ct. 1st Dist. 2005) (noting that the court had not located any post-*Rollins* cases finding that federal due process requirements had been met where Illinois due process requirements were not).

The federal test for personal jurisdiction under the Due Process Clause of Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  This "purposeful availment" requirement ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010). General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state.  *Helicopteros*, 466 U.S. at 416.  If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts."  *Hyatt*, 302 F.2d at 713.

On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.* The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit in that forum. *Burger King*, 471 U.S. at 472. This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,* 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.*

Finally, even if the purposeful availment and specific jurisdiction requirements have been met, the Court also must consider whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a

strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

## III.    Analysis

Plaintiff does not allege that Defendant has "continuous and systematic" contacts with Illinois sufficient to justify general personal jurisdiction, nor does the record support such a contention.  Thus, the Court moves directly to the specific jurisdiction inquiry.  See *Hyatt Int'l*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific personal jurisdiction).  Therefore, Lukas must establish that: (1) PGCC has purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois; (2) the alleged breach of contract arises out of PGCC's Illinois related activities; and (3) subjecting PGCC to specific jurisdiction in Illinois comports with traditional notions of fair play and substantial justice. See *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010) (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316).

### A.    Purposeful Availment

As a preliminary matter, PGCC points out that Lukas does not allege that PGCC traveled to Illinois for any purpose related to the contract at issue.  However, the lack of physical presence within the forum state is not dispositive.  "As the Supreme Court wrote in *Burger King*, 'a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.'"  *Purdue Research Found.*, 338 F.3d at 781 (quoting *Burger King,* 471 U.S. at 476).  The Seventh Circuit went further in *Purdue* and stated that "ongoing communications * *

* through use of mail, telephone, facsimile and other means of communication" are probative of purposeful availment. *Id.* at 785.

Additionally, PGCC points out that its contract with Lukas, an Illinois plaintiff, "is insufficient, by itself, to justify personal jurisdiction." [6] at 8 (quoting *Centurion Serv. Grp. v. SBMC Healthcare, LLC*, No. 12 C 9318, 2013 WL 1903292, at *7 (N.D. Ill. May 7, 2013)). Indeed, the existence of a contract is not dispositive in favor of Plaintiff. The specific jurisdiction inquiry is one of the totality of the circumstances and "we do not employ a 'mechanical or quantitative' test." *Citadel*, 536 F.3d at 761 (quoting *Int'l Shoe*, 326 U.S. at 319). *Burger King* instructs that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," provide a basis from which to determine if Defendant's contacts are sufficient for purposeful availment. *Burger King,* 471 U.S. at 478.

As both parties recognized, courts look to "who initiated the transaction, where the contract was entered into, where the performance of the contract was to take place, and where the contract was negotiated." *Citadel*, 536 F.3d at 762. Ultimately, none of the factors is dispositive but each "can support an exercise of jurisdiction in an appropriate case." *Id.* at 762 n. 4 (quoting an unrelated case involving the same plaintiff, *Citadel Grp. Ltd. v. Merle W. Med. Ctr., Inc.*, 06-C-6162, 2007 WL 5160444, at *3 (N.D. Ill. June 13, 2007)). The crucial question is whether PGCC should have "reasonably anticipate[d] being haled into court" in Illinois. *Volkswagen*, 444 U.S. at 287.

Plaintiff first argues that the transaction was initiated by PGCC when it placed the RFP on its website, accessible by Plaintiff in Illinois. To consider this contact as initiated by PGCC would be "random," "fortuitous" or "attenuated." *Burger King,* 471 U.S. at 475 (citing *Keeton,*

8

465 U.S. at 774) (internal quotation marks omitted). To establish jurisdiction via a website that is accessible in the forum state, "a defendant must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (emphasis in original); *cf. Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 755-56, 758 (7th Cir. 2010) (finding that a website expressly elected to do business with Illinois and forty-eight other states, and knew that doing so would subject it to jurisdiction in those states, where the site stated that it did business in all fifty states except New York due to ongoing litigation in that state). In *be2*, the Seventh Circuit dismissed a complaint against an online dating service for lack of personal jurisdiction even though twenty Chicagoans had created profiles on the site. See *be2*, 642 F.3d at 559. Although the site was interactive, accessible in Illinois, and used by Illinois residents, those contacts were unilateral activity, for which the defendant was not responsible. See *id.* Similarly, Lukas's unilateral activity of responding to the RFP – the first direct communication between the two organizations – could not reasonably put PGCC on notice that it might be haled into court in Illinois.

Yet, once Lukas made the initial contact, several follow-up communications took place via "numerous phone calls, e-mails, and other correspondence." [10] at 5. PGCC argues that these communications are no different than the phone and e-mail communications that the *Centurion* court found insufficient to support specific personal jurisdiction. *Centurion Serv. Grp. v. SBMC Healthcare, LLC,* No. 12 C 9318, --- F. Supp. 2d ---, 2013 WL 1903292, at *7 (N.D. Ill. May 7, 2013). The *Centurion* court held that a single indirect and aberrational contact between parties not subject to an agreement involving the forum state does not provide the foreseeability necessary to show that a defendant purposefully availed itself of the laws of the forum state. *Id.* at *7. The *Centurion* plaintiff contracted with a medical center to provide auction services for the center's medical equipment but the defendants were parties to a

guarantee of that contract, not the contract itself. *Id.* Furthermore, all negotiations took place in Texas and the agreement, executed in Texas, centered on assets in Texas to be sold in Texas. *Id.* at *3. However, the plaintiff argued that jurisdiction could be asserted based solely on e-mail and phone communication, through counsel, concerning release of the guarantee. *Id.* at *4. While "[i]t is well-settled in Illinois that '[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant,'" the indirect communication cited by the *Centurion* plaintiff was not the natural relationship but the exception. *Id.* at *5 (quoting *Heritage House Rest., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 284 (7th Cir. 1990)). In fact, the communication at issue may not have come from the defendant's counsel. *Id.* at *5. Finally, the court distinguished *Centurion* from a case finding a telephone call "a relevant contact" but basing jurisdiction on the "defendant's contacts with Illinois in their totality," because the phone and e-mail contacts in *Centurion* were the sole contacts supporting jurisdiction. *Id.* at *6 (quoting *Master Tech Prod., Inc. v. Smith*, 181 F. Supp. 2d 910, 912 (N.D. Ill. 2002)). Thus, it does not follow from the court's reasoning that there is a number of contacts below which jurisdiction is not justified; that would be a "mechanical or quantitative" test. *Int'l Shoe*, 326 U.S. at 319.

In contrast, the "numerous phone calls, emails, and other correspondence" between Lukas and PGCC resulted in PGCC (1) changing the proposal substantively, (2) awarding the bid to Lukas, and (3) paying the initial deposit to Lukas. [10] Ex. A, ¶ 5-8. These illustrative "intensive contact[s] * * * with the specific aim of arriving at the terms of a contract * * * [were] not random, fortuitous, or attenuated." *Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, *5 (N.D. Ill. Aug. 25, 2008) (internal quotation marks omitted). Plaintiff attaches no specific number to PGCC's phone and e-mail contacts, but the

specific contacts enumerated, combined with their numerosity, certainly demonstrate that the natural relationship between PGCC and Lukas was via phone and e-mail.  [10] Ex. A, ¶ 5. Notably, Defendant merely points out that Lukas does not attach a specific number to these contacts; Defendant does not contest the nature of the relationship, argue that the contacts specifically described are mischaracterized, or provide evidence of additional contacts not centered on Illinois.  [11] at 6-7.

In addition, PGCC does not dispute that it initiated the award and down payment.  *Id.* at 7; *Heritage House*, 906 F.2d at 284 (7th Cir. 1990) (holding that where a defendant "knowingly has reached out to [a] corporation and created a continuing relationship or obligation, it is subject to the jurisdiction of Illinois courts").  Indeed, the current record strongly supports an inference that PGCC intended to create a continuing relationship with Illinois-based Lukas.  PGCC's formal public announcement of Lukas as the winning bidder with Lukas's principal attending and speaking at the event evinces an intention to introduce Plaintiff to the public as a partner service provider rather than a firm accomplishing a discrete task.  [3-2] ¶ 6; see *Citadel*, 536 F.3d at 763 (distinguishing a contract to provide a continuing service from a contract only requiring a discrete task).   Plaintiff's support on PGCC's campus and throughout the trip further demonstrates that Lukas was not communicating only with Defendant, but that PGCC intended Lukas to establish a continuing relationship with the larger PGCC community.  [3-2] Ex. A, ¶¶ 12, 27, 33; *Citadel*, 536 F.3d at 764 (finding jurisdiction where "the parties had not finalized a long-term relationship * * * [but] were certainly contemplating that one would exist.").

The parties contest where they executed the contract, but the pertinent facts regarding the formation of the contract are not disputed.  The parties agree that PGCC never signed and returned the proposal and that PGCC awarded the contract via a phone call to Lukas, in Illinois.

11

They further agree that Lukas then traveled to Maryland for the public announcement. It is of no consequence to resolve where they formally executed the contract because the significant contacts underlying its formation support specific personal jurisdiction, as explained above.

Finally, Lukas argues that its performance took place in Illinois when PGCC sent it the deposit. Lukas also notes that its "work would be performed in Illinois *for the benefit* of PGCC." [10] at 6 (emphasis added). PGCC cites to *Purdue*, noting that, "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue Research Found.*, 338 F.3d at 780. However, *Purdue* does not necessarily dictate that Plaintiff's performance is immaterial. A plaintiff's performance supports jurisdiction where that performance is on behalf of the defendant, as a result of the defendant's activities, and is therefore not unilateral. See *Citadel*, 536 F.3d at 764 ("[Plaintiff] took steps on [Defendant's] behalf, with [Defendant's] authorization, to procure the necessary prerequisites to constructing a building, and so its actions were not the 'unilateral activities' of a party having some relationship with an out-of-state defendant.").

Though both parties neglected to cite the case, *Citadel* has particular force here. The *Citadel* court found specific personal jurisdiction where the Arkansas-based defendant contracted with the Illinois-based plaintiff to plan the building of a medical office in Arkansas. *Id.* at 758. The plaintiff developer traveled to Arkansas once and the defendant never entered Illinois, the forum state. *Id.* at 759. However, the defendant inquired into the developer's bid, sent the developer a deposit, and authorized the developer to proceed through mail, e-mail, phone, and fax. *Id.* at 759, 762. The Seventh Circuit found the exercise of specific personal jurisdiction justified because contacts with the purpose of authorizing the developer to take steps on defendant's behalf in the forum state rendered the defendant's performance, namely procuring

"the necessary prerequisites to construct[] a building," not unilateral. *Id.* at 764. The "contemplated future consequences" of the parties' relationship involved significant administrative work from Illinois and could lead to the plaintiff defending itself in Illinois due to activities that it performed based on the defendant's authorization. *Id.* (quoting *Burger King*, 471 U.S. at 479). In the court's view, the nature of the contract, to provide a service from the forum state along with the "continuing obligations and repeated contacts," contemplated at the outset, crossed "the threshold from offending due process to sufficient minimum contacts." *Id.* at 763.

The instant case is closely analogous to *Citadel* in several important respects. PGCC knowingly created a relationship authorizing Lukas to act on its behalf in Illinois to plan the Alaskan trip. While the final product of the relationship, the trip (akin to the building in *Citadel*), was to be outside of the forum, the purpose of the parties' contract was to plan that trip from Illinois. The parties clearly contemplated a relationship continuing for at least six months. That relationship naturally was based on mail, e-mail, and telephone correspondence. PGCC knew that Lukas would be providing its services from Illinois, which could have future legal consequences. PGCC initiated significant phone, e-mail, and mail contacts with Lukas in Illinois throughout the formation of the contract. [10] Ex. A, ¶ 5-8. Via telephone, e-mail, and U.S. mail, PGCC actively negotiated with Lukas, awarded Lukas the project, and made payment to Lukas in Illinois. *Id.* Although it is unclear how many times PGCC contacted Lukas in Illinois, it is the nature and not the exact number of contacts that is significant. As with the contracted-for building in *Citadel*, the contemplated objective of the parties' dealings, the Alaska trip, never came to fruition. However, the plaintiff in each case "incurred a great deal of expense on behalf of [defendant] in preparation for these later anticipated activities." *Citadel*, 536 F.3d at 762.

And while the outlays by Plaintiff here (approximately $107,000 according to the complaint, [3-2] ¶ 9) are less than the $500,000 that was at stake in *Citadel*, that fact indicates only that the cases differ in degree, not in kind, and the loss claimed in this case still satisfies the amount in controversy required to invoke this Court's subject matter jurisdiction.  See *Citadel*, 536 F.3d at 760.  In sum, Lukas has satisfied its burden of demonstrating that PGCC had sufficient minimum contacts with Illinois such that it should have reasonably anticipated that Lukas may bring an action against it in Illinois.

### B.      Forum Contacts Relating to this Controversy

"Out-of-state residents may avail themselves of the benefits and protections of doing business in a forum state, but they do so in exchange for submitting to jurisdiction in that state for claims arising from or relating to those activities." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 430 (7th Cir. 2010).  The Seventh Circuit has embraced this "tacit quid pro quo" test such that specific personal jurisdiction is justified where "the defendant's contacts * * * gave the defendant fair warning that the very business it sought in [the forum] might injure [a forum] resident."  *Id.*

A contract between the parties is not alone sufficient to establish relatedness.  Rather, the contacts must be "*between the parties in regard to the disputed contract.*" *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphasis in original).  This action certainly arises from the contract between the parties, the formation of which gave rise to all of the contacts discussed above.  To be clear, the Court has not considered Lukas's activities with third parties in Illinois as relevant to establish PGCC's purposeful availment.  Instead, the Court found relevant PGCC's contacts *authorizing* Lukas to engage third parties in Illinois.

14

Lastly, those contacts must "bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *RAR*, 107 F.3d at 1278. In evaluating the merits, the negotiations, award, payment, and fulfillment of contract obligations by each party will be relevant concerning the alleged breach of contract. More may be considered for a resolution on the merits, but the contacts need only be relevant to the dispute, not encompass the entirety of that dispute. *uBID,* 623 F.3d at 430 (approving of a Third Circuit decision noting that "defendant's contacts with [the forum] proved little about the plaintiff's negligence claim, but undoubtedly gave the defendant fair warning.")

### C. Fairness

Purposeful availment is not the end of the analysis, for PGCC claims that litigating in Illinois would "offend traditional notions of fair play and substantial justice." [6] at 2, 9. While PGCC presumably would prefer to litigate in Maryland, "[w]hen minimum contacts have been established, often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.,* 480 U.S. 102, 115 (1987). PGCC makes no argument that the burdens in this case will be particularly severe. There is no indication that the number of witnesses will be particularly large or that the process of discovery will be particularly complex due to the geography, much less that the process would be easier overall if the case were litigated elsewhere, all of which are factors that bear on the analysis. *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 909 (N.D. Ill. 2003) (citing *Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir. 1996)).

In short, there is no reason to believe that this case will be any different from the gamut of cases involving diverse parties. Once a plaintiff presents evidence of minimum contacts, it

becomes a defendant's job to show that traditional notions of fair play and substantial justice would be offended if the defendant were haled into the forum. *Burger King,* 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."); *id.* (noting that a defendant who claims substantial inconvenience "may seek a change of venue" and that most defendant considerations can be "accommodated through means short of finding jurisdiction unconstitutional"); *Asahi,* 480 U.S. at 116 (Brennan, J., concurring) (acknowledging that it would be a "rare case[ ]" for personal jurisdiction to be inappropriate where "the defendant has purposefully engaged in forum activities"). Defendant has not carried that burden here.

Further, Illinois plainly has an interest in enforcing commercial transactions to which its citizens are a party. See, *e.g., McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (California had a "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims"); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d at 432 (7th Cir. 2010) (upholding jurisdiction in part because of "Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois."). PGCC's assertion, unaccompanied by any showing of hardship, does not prohibit an Illinois-based court from exercising personal jurisdiction.

## IV.    Conclusion

For the reasons stated above, Defendant's motion to dismiss for lack of personal jurisdiction [5] is denied.

Dated:  October 29, 2013

_____
Robert M. Dow, Jr.
United States District Judge

16